Nita St. John McCollum ("Nita") appeals an order of the Etowah Probate Court granting the application of Jack Atkins ("Jack") to serve with Nita as a co-personal representative of the estate of George Washington Atkins, deceased ("the testator").[1]
Nita argues that the probate *Page 1147 
court erred in appointing Jack to serve with her as a co-personal representative because, she says, the testator's will appointed Jack a successor personal representative rather than a co-personal representative. Jack argues that the probate court did not err because, he says, the will appointed him a co-personal representative rather than a successor personal representative. We hold that the will appointed Jack a successor personal representative rather than a co-personal representative. Therefore, we reverse the order of the probate court granting Jack's application to serve with Nita as a co-personal representative, and we remand the case for further proceedings consistent with this opinion.
After the testator died, Nita petitioned the probate court to probate his will. In pertinent part, the will stated:
 "ITEM TWO
 "I hereby direct my Executor/Executrix, hereinafter named to pay all my just debts, funeral expenses and the expenses of administering my estate, out of my estate, as soon after my death as may be practical.
 "ITEM THREE
 "I authorize and empower said Executor/Executrix or Alternate co-Executors without court order, to sell at public auction or private sale, for cash or credit, with or without security, [to] mortgage, lease, invest, manage, control or otherwise deal with all my property, real or personal, at such times and upon such terms and conditions as he/she may determine.
 ". . . .
 "ITEM FIVE
 "I hereby designate and appoint as Executrix of this my Last Will and Testament, to my step-granddaughter, NITA ST. JOHN McCOLLUM and my nephew, Alternate Executor, JACK ATKINS.
 "I direct that my Executrix shall not be required to give bond or to file an inventory or appraisal of my estate or of any trust or share thereof in any court, that he shall make out and keep an inventory and exhibit the same to any party in interest at any reasonable time, and I direct that he shall be free from the control and supervision of any court and to serve without bond or surety."
(C. 3-4) (emphasis added).
After Nita petitioned the probate court to probate the will, Jack applied to the probate court to serve as a co-personal representative with Nita, and the probate court held a hearing on Jack's motion. Although Jack asserts that the probate court questioned the parties and the testator's other heirs at the hearing, the record does not contain a transcript of that hearing. Following that hearing, the probate court entered an order that stated, in pertinent part:
 "[I]t appearing to the Court that the Will is facially ambiguous and that Jack Atkins is a resident of this State and County and he is qualified and capable to join as a Co-Executor under said Will, and in order to insure the integrity of the estate with an abundance of caution, it appearing to the Court that the interest of the heirs at law will be best served by both Nita St. John McCollum and Jack Atkins serving as Co-Executors in the [p]robate of the Last Will Testament of George Washington Atkins, it is[:] *Page 1148 
 "ORDERED that Jack Atkins is hereby joined as Co-Executor, with Co-Executor Nita St. John McCollum, in the probate of the Last Will Testament of George Washington Atkins in this action."
(C. 10.)
In arguing that the will appointed Jack a successor personal representative rather than a co-personal representative, Nita relies on the first sentence of item five of the will. Nita argues that the first sentence of item five appointed Jack an "Alternate Executor," which Nita argues is synonymous with a successor executor who would serve only if Nita were unable or unwilling to serve as personal representative. Nita further argues that her construction of the first sentence of item five does not create an irreconcilable conflict with any other portion of the will.
On the other hand, Jack argues that the presence of the conjunction "and" between Nita's name and Jack's name in the first sentence of item five evidences the testator's intent to appoint Nita and Jack to serve jointly in the same capacity, i.e., as co-personal representatives. Jack further argues that the presence of the word "Alternate" in the first sentence of item five is insignificant. Finally, Jack argues that the probate court's order is entitled to a presumption of correctness under the ore tenus rule because the probate court questioned the parties and the testator's other heirs at the hearing on Jack's motion.
In Jacoway v. Brittain, 360 So.2d 306, 308 (Ala. 1978), the Supreme Court explained:
 "A patent ambiguity is not a true ambiguity; it is merely confusion created on the face of the will by the use of defective, obscure or insensible language. On the other hand, a latent ambiguity occurs where the language is clear and intelligible, but when considered in light of certain extraneous facts, it takes on a multiple meaning."
"[E]xtrinsic evidence is not admissible if . . . the ambiguity within the instrument is a patent one. . . . Extrinsic evidence is admissible only in the case of a latent ambiguity." Gaffordv. Kirby, 512 So.2d 1356, 1363 (Ala. 1987). In the case now before us, any lack of precision in the language of the first sentence of item five is apparent on the face of the will and, therefore, is patent rather than latent. Jacoway. Consequently, parol evidence was not admissible in the probate court to resolve any doubt created by such a lack of precision, Gafford, and the determination of the meaning of that language is a question of law. Reynolds v. Massey, 219 Ala. 265, 272, 122 So. 29, 35
(1929) ("[W]here there is no dispute as to the terms of a written document, whether it be a deed, will, or contract, though there may be some ambiguity on its face, subjecting it to different constructions, the court will adopt a construction that will sustain it, rather than one that will render it invalid, and in such case the question is one of law for the court, and not one of fact for the jury." (emphasis added)). Consequently, the ore tenus presumption of correctness does not apply to the probate court's order, and we review it de novo. Beavers v. County ofWalker, 645 So.2d 1365, 1372 (Ala. 1994) ("[The ore tenus] standard's presumption of correctness has no application to a trial court's conclusions on questions of law.").
 "The fundamental rule in the construction of wills is that the intention of the testator is the controlling factor, and his intent must be gathered from the will in its entirety, and each clause or provision should be so interpreted as to avoid an irreconcilable conflict when reasonably susceptible of such a construction." *Page 1149 Curlee v. Wadsworth, 273 Ala. 196, 199, 136 So.2d 886, 888
(1962).
The placement of "Alternate Executor" in grammatical apposition with "Jack Atkins" in the first sentence of item five evidences the testator's intent to designate Jack an "Alternate Executor." The American Heritage Dictionary 99 (2d college ed. 1991) defines the noun "alternate" as "[a] person acting in the place of another; substitute." Thus, the testator's designation of Jack as "Alternate Executor" evidences an intent on the part of the testator to appoint Jack a successor personal representative rather than a co-personal representative. This construction of the first sentence of item five does not create an irreconcilable conflict with any other part of the will. We must reject Jack's interpretation of the first sentence of item five of the will because it would require us to ignore the presence of the word "Alternate."
 Conclusion
We reverse the order of the probate court granting Jack's application to serve as a co-personal representative with Nita, and we remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
CRAWLEY, P.J., concurs in the result, without writing.
[1] Section 12-22-21(2), Ala. Code 1975, provides that an aggrieved party may appeal a probate court's "decree, judgment or order on an application claiming the right to . . . administer an estate" to the circuit court or the Supreme Court. Nita appealed to this court instead of to the Etowah Circuit Court or the Supreme Court. Because this court did not have subject-matter jurisdiction, it transferred the appeal to the Supreme Court. Subsequently, the Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.